270 So.2d 209 (1972)
Jimmie W. CORKERN
v.
Ladonias Rogers CORKERN.
No. 9016.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Rehearing Denied December 26, 1972.
Application for Writ Withdrawn February 1, 1973.
Richard P. Massony and Robert A. Anderson, Jr., Covington, for Ladonias Rogers Corkern.
France W. Watts, III, Watts & Watts, Franklinton, for Jimmie W. Corkern.
Before SARTAIN, BLANCHE and EVERETT, JJ.
*210 BLANCHE, Judge.
Plaintiff, Jimmie W. Corkern, filed a suit for separation on April 1, 1958, against his wife, defendant, Ladonias Rogers Corkern, and obtained a judicial separation from defendant on April 7, 1958, thus terminating the community of acquets and gains which theretofore existed between plaintiff and defendant. Plaintiff and defendant reconciled and resumed living together around July of 1958, but never executed any notarial act re-establishing the community of acquests and gains, as provided for by Louisiana Civil Code Article 155,[1] until January 27, 1970, at which time the litigants executed two separate notarial agreements, one entitled "Re-Establishment of Community of Acquets and Gains" and the other entitled "Acknowledgement of Indebtedness." The first of these notarial instruments contains the following significant provisions:
"That by these presents that they wish to avail themselves of the provisions of Article 155 of the Louisiana Civil Code as amended to re-establish the community of acquets and gains as of April 1, 1958 but without prejudice to their respective property rights validly acquired in the interim between April 7, 1958 and January 27, 1970.

"Said appears [sic], Jimmie W. Corkern and Ladonias R. Corkern, further declare that they have reconcilled [sic] and that they do by these presents hereby jointly, as husband and wife, re-establish the community of acquests and gains heretofore existing between them as of April 1, 1958, which act shall be without prejudice to separate property rights and all other property rights of Jimmie W. Corkern and Ladonias R. Corkern validly acquired in the interim between April 7, 1958 and January 27, 1970." ("Re-Establishment of Community of Acquets and Gains," Record, pp. 31, 32Emphasis supplied by the Court)
The second of the aforementioned instruments contains the following pertinent provision:
"Said appearers, Jimmie W. Corkern and Ladonias Rogers Corkern, further declare unto me, Notary, that this acknowledgement in no way affects property rights or other rights of either party validly acquired between the interim of April 7, 1958 and January 27, 1970, and Ladonias Rogers Corkern further acknowledges and declares to me Notary, that all property, immovable, corporeal, incorporeal, and movable, consisting partially and without limitation to all dairy equipment, farm equipment, stocks and other securities acquired by Jimmie W. Corkern between April 7, 1958 and January 27, 1970 are his separate and paraphernal property." ("Acknowledgment of Indebtedness," Record, pp. 33-35 Emphasis supplied by the Court)
Shortly thereafter, the litigants encountered further marital difficulties and plaintiff husband filed a petition for separation on February 16, 1970, on the ground of cruelty. Plaintiff husband then filed on *211 April 23, 1970, a pleading styled, "First Amended and Supplemental Petition," seeking an absolute divorce from defendant on the ground of adultery. Judgment was rendered in favor of plaintiff on May 13, 1970, and read and signed on May 15, 1970, granting plaintiff a divorce from defendant on the ground of adultery. In this judgment, however, defendant wife was granted the permanent care, custody and control of the two minor children born issue of the marriage. The appeal from this judgment was dismissed with prejudice on the joint motion of both parties on September 22, 1970.
Defendant wife filed a pleading styled, "Petition to Settle Community," on November 2, 1970, wherein the former wife urged that the community of acquets and gains was re-established by virtue of the first of the aforementioned notarial acts on January 27, 1970, as of April 1, 1958, or alternatively by virtue of the aforementioned notarial act as of the date of reconciliation of the litigants in August or September of 1958. Alternatively, the former wife alleged that if the notarial act were held void or ineffective, she was entitled to one-half the value of the increase of the separate property of her husband by virtue of Louisiana Civil Code Article 2408. In the further alternative, and in the event the aforementioned notarial act were declared void or ineffective, the former wife urged entitlement to one-half of the property and profits of the partnership which allegedly existed between her and her former husband. In the further alternative, defendant wife urged that to deprive her of her right to share in the alleged community of acquets and gains which existed following the reconciliation of the parties in August or September of 1958 constituted a denial of equal protection and a deprivation of property without due process of law. In the final alternative, defendant wife urged that the community was re-established on January 27, 1970, and existed until February 16, 1970, the date of filing of the second suit for separation.
The trial court rendered judgment on September 15, 1971, and read and signed judgment on October 15, 1971, decreeing that all property acquired by Jimmie W. Corkern and Ladonias Rogers Corkern between April 7, 1958, and January 27, 1970, constituted separate property of Jimmie W. Corkern. In this same judgment the trial court held that the property acquired by Jimmie W. Corkern and Ladonias Rogers Corkern between January 27, 1970, and May 13, 1970, constituted community property which was ordered partitioned in accordance with law. From this judgment defendant wife appealed. Plaintiff husband filed no appeal from this judgment, nor did he file an answer to his former wife's appeal. For the reasons hereinafter set forth, this judgment is affirmed.
On October 26, 1970, plaintiff husband filed a pleading styled, "Petition for Rule for Change of Child Custody," wherein plaintiff husband alleged as grounds for the requested change in custody only the following:
"Your petitioner further shows that since defendant has been awarded the custody of the minor children, that there has been a change in circumstances and that it is in the best interest of the minor children for your petitioner to be awarded their care, custody and control, because the children have a severe ill feeling toward defendant, defendant punishes the children without cause, defendant leaves the children for excessive and extended periods of time and defendant harasses the plaintiff in the presence of the minor children, and further that the present circumstances under which the minor children are living are not suitable and are not in their best interest."
The trial judge who heard the testimony pertaining to this requested change of custody later recused himself, and in accordance with the stipulation of the litigants, the issue of the requested change of child custody was decided by Judge Thomas W. Tanner of the trial court on the basis of *212 the pleadings and transcribed testimony. Judgment was rendered, read and signed on April 28, 1971, denying the requested change of custody, from which judgment plaintiff husband appealed. This judgment is likewise affirmed for the reasons hereinafter set forth.[2]
The trial judge gave the following Written Reasons for denying the claims of defendant wife to have treated as community property that property acquired by her former husband during the twelve years of cohabitation following reconciliation from 1958 to 1970:
"The question before the court is the nature of the property acquired by Jimmie Corkern between April 7, 1958 and January 27, 1970. During this period of time, a home and dairy business was acquired which has a substantial value.
"A decree of separation from bed and board carries with it a dissolution of the community which is not re-established by the reconciliation of the parties. The procedure for re-establishing of the community after a reconciliation is set forth in Article 155 of the Civil Code of this state. It provides in part that the parties must appear before a notary and two witnesses and execute an act jointly to re-establish the community without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation.
"The question of whether or not the community of acquets and gains was re-established between the parties after the rendition of the judgment of separation on April 7, 1958 in accordance with the provisions of Article 155 of the Civil Code, then must be determined. If the community was not re-established, then any property acquired subsequent to the judicial separation is not community property even though acquired after the parties were reconciled and living together. The court must find that the community was not re-established until January 27, 1970, and all property acquired by Mr. Corkern became his separate property. Although nearly twelve years went by after they reconciled the only way that the community could be re-established under our law is by complying with the provision of Article 155 of the Civil Code. This was not done and in fact Mr. Corkern testified that he was aware of this provision of the law and had been advised by counsel as to his rights in this regard. Mrs. Corkern of course, testified that she thought she acquired one-half of the property by the fact that she was married and living with Mr. Corkern. Reconciling with her husband was not enough to re-establish the community under our law. Article 155 of the Civil Code must be complied with. See Maloney v. Maloney, La.App., 197 So.2d 131.
"The only property to be partitioned would be that property acquired after the community was re-established on January 27, 1970 and before it was terminated again on May 13, 1970.[3]
*213 "The court believes that plaintiff is also bound by the acknowledgment she made on January 27, 1970 that all property acquired after the judgment of legal separation until January 27, 1970 was her husband's separate property." (Written Reasons for Judgment, Record, pp. 632, 633)
The law is clear that once the community of acquets and gains is terminated such as by virtue of a judicial separation, the subsequent reconciliation of the spouses, although it operates to vitiate the judgment of separation in other respects, does not re-establish the community of acquets and gains which previously existed between the spouses, nor does it establish a new community of acquets and gains between the spouses. On the contrary, the spouses remain separated in property unless and until they both agree to avail themselves of the privilege of re-establishing the community of acquets and gains as provided for by Louisiana Civil Code Article 155, Austin v. Succession of Austin, 225 La. 449, 73 So.2d 312 (1954); Barnes v. Barnes, 207 So.2d 895 (La.App.1st Cir. 1968); Maloney v. Maloney, 197 So.2d 131 (La.App.4th Cir. 1967); Sylvester v. Sylvester, 137 So.2d 716 (La.App.3rd Cir. 1962).
The notarial instruments executed by the litigants herein on January 27, 1970, clearly negate any intent on the part of plaintiff husband to relinquish his individual and separate property rights in the property which was acquired by him following the initial termination of the community of acquets and gains in 1958 and until the execution of the notarial instruments on January 27, 1970. The instruments admit of no other possible construction, as evidenced by the emphasized excerpts therefrom reproduced above.
Defendant wife's alternative claim that she is entitled to one-half the value of the increase of her former husband's separate property by virtue of Louisiana Civil Code Article 2408[4] is without merit. This article is contained in Chapter 3 of Title VI of Book III of the Louisiana Revised Civil Code, and is applicable only if there exists a community of acquets and gains between the spouses.[5] In Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956), the Louisiana Supreme Court held that the use of the phrase "common labor or industry" in Article 2408 means "community labor or industry," as the word "common" used in this article is synonymous with "community."
*214 Defendant wife's other alternative claim to entitlement to one-half of the property and profits acquired by her former husband during the period from 1958 to 1970 on the basis of the existence of a partnership between the spouses is likewise without merit, for the reason that by her own admission there was never any written or even verbal agreement forming any type of partnership between defendant wife and plaintiff husband following their reconciliation in 1958. Partnership is a synallagmatic and commutative contract, Louisiana Civil Code Article 2801, and can only be created by the consent of the parties, Louisiana Civil Code Article 2805. The cases cited by defendant wife are factually inapposite inasmuch as those cases involve situations of established consent or contract to engage in a partnership or joint venture. Similar arguments of equitable ownership or the right of the wife to recover from her husband or his estate on some quantum meruit basis following a reconciliation after the termination of the community but where the spouses had not executed the requisite notarial act re-establishing the community were expressly rejected by the Louisiana Supreme Court in Austin v. Succession of Austin, 225 La. 449, 73 So.2d 312, 317, 318 (1954).
We likewise find no merit in defendant wife's last alternative contention that the result reached herein violates her constitutional rights of due process and equal protection under the law. Defendant wife was not required to reconcile with plaintiff husband, nor does her ignorance of the law that the spouses remain separated in property following a judgment of separation which terminates the community, unless the community is unconditionally re-established by the consent of both as manifested by an unconditioned notarial act as provided for by Louisiana Civil Code Article 155, result in a deprivation of her constitutional rights.
Defendant wife makes the additional contention that the judgment of the trial court should be amended to reflect her entitlement to the sum of $10,000 representing an alleged acknowledged indebtedness of her former husband to her, as contained in the second above-mentioned notarial instrument executed on January 27, 1970. We note, however, that this claim was not put at issue by defendant wife's "Petition to Settle Community," as it is nowhere alleged in her pleadings, nor can the pleadings be deemed to have been enlarged by virtue of the introduction in evidence of this second aforementioned notarial instrument, which instrument, instead, was properly introduced in evidence for the purpose of showing the restricted intent of plaintiff husband, as acknowledged by defendant wife, that the notarial act re-establishing the community would not operate to classify property acquired by plaintiff husband from 1958 to 1970 as community property. The contention relative to the claimed $10,000 debt was, accordingly, neither before the trial court nor is it properly before this Court and we, accordingly, pretermit consideration of the merits of this claim.
With regard to plaintiff husband's appeal from the judgment refusing to disturb defendant wife's custody of the minor children, we find ourselves in agreement with the Written Reasons expressed by the trial judge:
"Applying the law as set out herein, the court finds from evidence in the record that the plaintiff in rule has failed to meet the burden of proof imposed upon him and the court must maintain the custody in the mother as previously determined by the court. There is nothing in the evidence which convinces the court that there has been a material change in the conditions under which the children are presently living. There is no evidence which shows that the children's present living conditions are detrimental to their interest. The fact that the mother's family has some domestic problems is not sufficient to *215 change the custody of the children where it is not shown that these children are involved in anyway or even present when it occurs.
"The court is sure that the father loves his children and would provide a good home for them but nothing has been shown to the court that would convince it that the mother does not equally love her children and provides a good home for them with what she has. It is the court's duty to decide these questions but it is also the duty of both parents to remember that the best interests of the children must be served by them as well as the court. The personal problems of the parents must become secondary when the welfare of the children is concerned which is the primary concern of this court and it hopes is the primary concern of both parents." (Written Reasons for Judgment, Record, p. 399)
This Court is not called upon to review the propriety of the award of permanent custody of these minor children to defendant wife as an incident to the judgment of divorce rendered on May 13, 1970, and signed on May 15, 1970. Although counsel for plaintiff husband addresses most of his arguments to the alleged prior adulterous conduct of defendant wife as a result of which plaintiff husband was granted a divorce, plaintiff husband neither specifically alleged nor proved that defendant wife was either morally or mentally unfit to continue to have permanent custody of the children, or that the welfare or best interests of the children demanded a change of custody.
For the foregoing reasons, the judgments appealed from are affirmed. Each appellant is assessed with the costs attributable to his or her respective appeal, with all other costs of this appeal being assessed one-half to plaintiff husband and one-half to defendant wife.
Affirmed.
NOTES
[1] Louisiana Revised Civil Code Article 155, as amended, provides as follows:

"The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation."
[2] The record also contains another pleading requesting change of custody filed by plaintiff husband on August 10, 1971, wherein judgment was rendered and signed on September 15, 1971, again refusing to change custody. No appeal from this judgment was taken, and the correctness of this judgment is, therefore, not before the Court.
[3] The reproduction of these Written Reasons for Judgment should not be construed as constituting approbation of the trial court's judgment declaring that the property acquired by the litigants between January 27, 1970, and May 13, 1970, the date of the judgment of divorce, properly constitutes community property. See, for example, Foster v. Foster, 246 So.2d 70 (La.App.4th Cir. 1971), writ refused, 258 La. 774, 247 So.2d 867, which holds that community of acquets and gains is dissolved as of date of filing petition for separation and not as of date of divorce judgment. Inasmuch as plaintiff husband neither appealed nor answered defendant wife's appeal concerning this aspect of this judgment, however, this issue is not before us.
[4] Louisiana Civil Code Article 2408 provides as follows:

"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
[5] Louisiana Civil Code Article 2408 has as its source Article 1437 of the Code Napoleon (1804), which reads as follows:

"Whenever an amount is taken out of the community either to pay the personal debts or charges of one of the spouses, such as the price or a part of the price of an immovable belonging to him separately, or the redemption of property from servitudes, or for the recovery, preservation or amelioration of his separate property, and in general whenever either husband or wife has derived a personal profit from the community property, he must account for it to the community."
It is evident that this provision envisions the existence of a community of acquets and gains.